UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATHANIEL CARSWELL, | ) | |
| | ) | Case No. 1:21-cv-06736 |
| Plaintiff, | ) | |
| | ) | Judge Gary Feinerman |
| v. | ) | |
| | ) | Magistrate Judge Sunil R. Harjani |
| P.O. SEAN LYNCH #18495, | ) | |
| P.O. NP NESIS #3329, and | ) | JURY DEMAND |
| THE CITY OF CHICAGO, a municipal | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, NATHANIEL CARSWELL ("CARSWELL"), by and

through his attorneys, **C. Norris Law Group, LLC**, complaining against the Defendants, P.O.

SEAN LYNCH #18495 ("LYNCH"), P.O. NP NESIS #3329 ("NESIS"), and THE CITY OF

CHICAGO, a Municipal Corporation as follows:

## JURISDICTION AND VENUE

1.      This action is brought pursuant to the United States Constitution, the laws of the

United States, specifically, 42 U.S.C. §1983 and §1988, and the laws of the State of Illinois to

redress deprivations of the civil rights of the Plaintiff, CARSWELL, committed by acts and/or

omissions of the Defendants, LYNCH and NESIS, under color of law, and within the scope of

their employment with Defendant THE CITY OF CHICAGO.

2.      Jurisdiction is based on Title 28 U.S.C., Sections 1343 and 1331.

3.      The United States District Court for the Northern District of Illinois is the proper

federal venue for this action, pursuant to Title 28 of the United States Code, Section 1391(b),

because it is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

4.      The Plaintiff,  CARSWELL, was at all relevant times a United States Citizen and resident of the State of Illinois.

5.      At all relevant times the Defendants, LYNCH and NESIS, were duly sworn Chicago Police Officers acting within the scope of their employment with THE CITY OF CHICAGO, and under color of law.

6.      At all relevant times the Defendant, THE CITY OF CHICAGO, was a municipality duly incorporated under the laws of the State of Illinois.

## FACTS

7.      On September 26, 2018, CARSWELL was riding as a passenger in a vehicle with two other individuals on his way to work.

8.      CARSWELL sat in the front passenger seat of the vehicle, while Antonio Henderson ("Henderson") sat in the driver's seat and CARSWELL's girlfriend, Iyanna Moore ("Moore"), sat in the back driver's side seat. Next to Moore in the backseat was a baby carriage.

9.      At no time relevant to these events did CARSWELL have ownership, possession, or control of the Nissan.

10.      As they drove down 79th Street, a marked Chicago Police vehicle signaled for them to pull over.

11.      Henderson drove the vehicle to a stop in a White Castle parking lot off of 79th Street.

12. Two uniformed Chicago Police officers approached the vehicle and ordered the three occupants to exit and to stand at the rear of the vehicle.

13. One officer stood by the three occupants by the rear of the vehicle while the second officer conducted a search of the vehicle.

14. The officer's search produced no evidence of an illegal gun-related crime or wrongdoing. The officers told CARSWELL and the other two occupants that they were free to leave, and they did not issue a traffic ticket.

15. CARSWELL and the other two passengers re-entered the vehicle in the same seats which they occupied prior to the stop.

16. Shortly after the three car occupants merged back onto 79th Street, they passed an unmarked Chicago Police vehicle being driven by Defendants LYNCH and NESIS in the opposite direction.

17. Immediately after passing the vehicle, Defendants LYNCH and NESIS conducted an abrupt U-turn and pulled over the vehicle in which CARSWELL was a passenger.

18. Defendants LYNCH and NESIS signaled for Henderson to pull over his vehicle.

19. Henderson complied and drove the vehicle to a stop on the side of 79th Street.

20. Defendants LYNCH and NESIS then ordered CARSWELL, Henderson, and Moore to exit the vehicle, and they complied.

21. Defendant NESIS detained Henderson and CARSWELL in handcuffs while Defendant LYNCH then conducted a search of the vehicle. In the back seat he saw the baby carriage.

22. At no point did either Defendants LYNCH or NESIS notify CARSWELL, Henderson, or Moore of the basis for their probable cause for effecting the stop and detention.

23.    Upon investigating the baby carriage, LYNCH allegedly observed what he recognized as the exposed barrel of a handgun from a concealed position in the rear portion of the baby carriage.

24.    Defendants, without probable cause, arrested CARSWELL for unlawful possession of the allegedly found handgun.

25.    At no point did CARSWELL ever knowingly possess, control, or own the allegedly found handgun.

26.    Instead, to substantiate their false claim of probable cause to arrest CARSWELL for the unlawful possession of the allegedly found handgun, Defendants LYNCH and NESIS fabricated the following evidence:

      a.    Defendant LYNCH falsely reported that he saw CARSWELL make furtive movements in the direction of the backseat upon initiating the traffic stop.

      b.    Defendant LYNCH falsely reported that CARSWELL confessed to owning the found handgun.

27.    On September 26, 2018, Defendants LYNCH and NESIS intentionally submitted charges for felony review approval that they knew were false and and were instead supported only by evidence they fabricated.

28.    That same day, the felony complaint against CARSWELL was approved by the Cook County State's Attorney's office, based upon the fabricated evidence and testimony submitted by Defendants LYNCH and NESIS.

29.    On September 26, 2018, a grand jury returned an indictment against CARSWELL, based upon the fabricated evidence and testimony submitted by Defendant LYNCH.

30.     On March 12, 2019, CARSWELL was convicted at trial, based upon the fabricated evidence and false testimony of Defendant LYNCH regarding CARSWELL's alleged movements and confession.

31.     CARSWELL was sentenced to forty-two months in the custody of the Illinois Department of Corrections (IDOC).

32.     On December 19, 2019, CARSWELL was released from physical custody and placed on parole.

33.     CARSWELL was placed on house arrest until February 19, 2020 for the first sixty days of his parole.

34.     On July 26, 2020, CARSWELL was returned to the custody of IDOC.

35.     On October 2, 2020, CARSWELL was released from the legal and physical custody of IDOC.

36.     On November 15, 2021, CARSWELL's conviction was overturned on appeal in a manner indicative of his innocence.

37.     As a direct and proximate result of his unlawful detention, CARSWELL suffered severe deprivations of his liberty, mental anguish, mental, physical, and emotional suffering, loss of economic opportunity, and continuing pain, trauma, and harm.

### COUNT I- 42 U.S.C. § 1983 FIFTH & FOURTEENTH AMENDMENT: FABRICATION OF EVIDENCE

1-37.   Each of the foregoing paragraphs are incorporated as if fully restated herein.

38.     Defendants LYNCH and NESIS submitted fabricated evidence, under color of law, in support of their criminal complaint against CARSWELL, which included:

a.     Defendant LYNCH's false report that he observed CARSWELL make furtive movements in the direction of the backseat upon initiating the traffic stop.

b.     Defendant LYNCH's false report that CARSWELL confessed to owning the found handgun.

39.     Defendants' fabricated evidence was subsequently used against CARSWELL to secure a grand jury indictment and conviction.

40.     The actions taken by Defendants LYNCH and NESIS violated CARSWELL's Fourteenth Amendment right to be free from fabricated self-incrimination and deprivation of liberty without due process of law as guaranteed by the U.S. Constitution and made enforceable under 42 U.S.C. § 1983.

41.     Additionally, and alternatively, these actions were taken maliciously, willfully, wantonly, and/or with reckless disregard for CARSWELL's Constitutional rights.

42.     As a result of Defendants' unlawful acts, taken under color of law, CARSWELL suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, loss of economic opportunity, and other grievous and continuing injuries and damages set forth above.

**WHEREFORE**, Plaintiff, CARSWELL, respectfully requests that this Court enter judgment in his favor and against Defendants LYNCH and NESIS,  and  award  substantial compensatory and punitive  damages, costs of this action, attorney's fees, and any other relief this Court deems equitable, fair, and just.

## COUNT II – 42 U.S.C. § 1983 FOURTH AMENDMENT UNLAWFUL PRETRIAL DETENTION

1-42.     Each of the foregoing paragraphs are incorporated as if fully restated herein.

43.     In the manner described above, Defendants LYNCH and NESIS individually and jointly, as well as under color of law, used false statements and a fabricated confession that they manufactured in order to accuse CARSWELL of criminal activity, to cause the institution and continuation of criminal proceedings against CARSWELL, and to cause CARSWELL to be held in pretrial detention without probable cause.

44.     Defendants LYNCH and NESIS caused CARSWELL to be seized and deprived of his liberty without probable cause, in violation of his rights secured under the Fourth and Fourteenth Amendments to the U.S. Constitution and made enforceable under 42 U.S.C. § 1983. Subsequent to arresting CARSWELL, Defendants, LYNCH and NESIS, caused Plaintiff to be detained without probable cause for the following periods:

   a.   From the date of CARSWELL's arrest on September 26, 2018 until he was released on parole on December 19, 2019;

   b.   For the period of time when he was restricted to house arrest from December 19, 2019 until February 19, 2020; and

   c.   For the period of time when he was recommitted to IDOC custody from July 26, 2020 to October 2, 2020.

45.     Detention without probable cause violates the Fourth Amendment. *Manuel v. Joliet*, 137 S. Ct. 911 (2017)

46.     As a result of Defendants' unlawful acts, taken under color of law, CARSWELL suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, loss of economic opportunity, and other grievous and continuing injuries and damages set forth above.

   **WHEREFORE** the Plaintiff, CARSWELL, respectfully requests that this Court enter judgment in his favor and against Defendants LYNCH and NESIS and  award  substantial

compensatory and punitive damages, costs of this action, attorney's fees, and any other relief this Court deems equitable, fair, and just.

<h2 style="text-align:center"><u>COUNT III – MALICIOUS PROSECUTION</u></h2>

1-46.   Each of the foregoing paragraphs are incorporated as if fully restated herein.

47.   The Defendants LYNCH and NESIS and the CITY OF CHICAGO, through its employees and agents, proceeded with the charges against Plaintiff knowing they were false.

48.   The Plaintiff retained an attorney and had to litigate the matter.

49.   The Defendants LYNCH and NESIS and the CITY OF CHICAGO, through its employees and agents, took actions in furtherance of these false charges that were intentional, willful, and wanton.

50.   The charges were resolved in the Plaintiff's favor in a manner indicative of his innocence.

51.   As a result of the actions of the Defendants, LYNCH, NESIS, and the CITY OF CHICAGO, through its employees and agents, the Plaintiff suffered fear, emotional distress, anxiety, loss of liberty, economic opportunity, and monetary expenses.

**WHEREFORE**, the Plaintiff, CARSWELL, prays for judgment in his favor and against the Defendants, LYNCH, NESIS, and the CITY OF CHICAGO, through its employees and agents, for reasonable compensatory and punitive damages, plus costs.

<h2 style="text-align:center"><u>COUNT IV- RESPONDEAT SUPERIOR</u><br><u>Against the City of Chicago</u></h2>

1-51.   Each of the foregoing paragraphs are incorporated as if fully restated herein.

52.   In committing the acts alleged in this Complaint, both of the individually named Defendant officers, LYNCH and NESIS, were members of, and agents of, the CITY OF CHICAGO, acting at all relevant times within the scope of their employment.

8

53.    Defendant, CITY OF CHICAGO, is liable as principal for all torts in violation of state law committed by its agents.

54.    The Plaintiff, CARSWELL, suffered damages for his mental and emotional injuries, anguish, pain, humiliation, and embarrassment that were inflicted by the individual officers from the Chicago Police Department acting under employment of the City of Chicago.

**WHEREFORE**, the Plaintiff, CARSWELL, prays for judgment in his favor and against the Defendant, CITY OF CHICAGO, for the compensatory damages of its employees, LYNCH and NESIS, plus costs.

## COUNT V– INDEMNIFICATION
### Against the City of Chicago

1-54.   Each of the foregoing paragraphs are incorporated as if fully restated herein.

55.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

56.    The Defendants, LYNCH and NESIS, were employees of THE CITY OF CHICAGO, acting within the scope of their employment in committing the misconduct described herein. *See* 745 Ill. Comp. Stat. Ann. 10/2-302 (eff. Jan. 1, 2017).

**WHEREFORE**, should the Defendants, LYNCH and NESIS, be found liable for any of the acts alleged above, Defendant THE CITY OF CHICAGO would be liable to pay the Plaintiff, CARSWELL, any judgment obtained against said officers.

## JURY DEMAND

The Plaintiff, NATHANIEL CARSWELL, hereby requests a trial by jury.

Respectfully submitted,

<u>/s/ Brian Orozco</u>
One of Plaintiff's Attorneys
C. Norris Law Group, LLC
900 West Jackson Blvd., Suite 6E
Chicago, Illinois, 60607